JANE DAVENPORT BLUM *v.* HOWARD R. BLUM
(AC 28101)
(AC 28532)

Flynn, C. J., and DiPentima and Lavery, Js.

Argued March 19—officially released July 22, 2008

*Gary I. Cohen*, with whom, on the brief, was *Marci E. Finkelstein*, for the appellant (defendant).

*Deborah L. Grover*, for the appellee (plaintiff).

*Christopher P. Norris*, for the minor children.

*Opinion*

DiPENTIMA, J. The defendant, Howard R. Blum, appeals from the judgments of the trial court denying

his postjudgment motions to modify his alimony and child support obligations. The defendant claims that the court improperly (1) determined that he had failed to meet his burden of proving that the cohabitation of the plaintiff, Jane Davenport Blum,[1] had altered her financial needs, (2) determined that he had failed to meet his burden of proving a substantial change in his income or earning capacity and (3) awarded attorney's fees to the plaintiff. We affirm the judgments of the trial court.

The following facts are not in dispute. The parties were married on January 26, 1991. During the marriage, the parties had three children together. On May 30, 2003, the plaintiff filed a complaint seeking a dissolution of the marriage and other relief. The court rendered judgment dissolving the parties' marriage on July 25, 2005.

Pursuant to the judgment of dissolution, the court ordered the defendant to pay to the plaintiff, inter alia, periodic alimony in the amount of $4300 per month, plus 33 percent of his net income in excess of $190,000 per calendar year. The court ordered that the alimony "shall be modifiable as to amount and shall terminate on the first to occur of any of the following events . . . [s]even years from the date of dissolution . . . [t]he death of either party . . . [t]he remarriage of the [p]laintiff . . . [t]he [p]laintiff's cohabitation with an unrelated person pursuant to . . . General Statutes § 46b-86 (b)." In addition, the court ordered the defendant to pay child support in the following amounts: $2630 per month; 17.16 percent of his net earnings in excess of $15,500 per month; 90 percent of day care, extracurricular and unreimbursed medical and dental expenses for the benefit of the minor children; and

[1] As part of the July 25, 2005 judgment of dissolution, the court granted the plaintiff's request to restore her birth name to Jane Davenport Cox.

all health insurance premiums for the benefit of the minor children.

On May 30, 2006, the defendant filed the first of two motions to modify his alimony and child support obligations.[2] In his May 30, 2006 motion, the defendant alleged that the plaintiff had begun living with Damian Donovan, the father of the plaintiff's fourth child, born on June 16, 2006, and that their cohabitation resulted in a change in her financial circumstances sufficient to justify a reduction or termination of the defendant's alimony obligations. After a hearing on August 28, 2006, the court, *Hon. Sidney Axelrod*, judge trial referee, denied the defendant's May 30, 2006 motion.

On October 24, 2006, the defendant filed a second motion to modify his alimony and child support obligation. In his October 24, 2006 motion, the defendant alleged that his income had declined since the date of the judgment of dissolution and that the decline in his income was a substantial change in circumstances sufficient to warrant a reduction in his alimony and child support obligations.[3] After a hearing, the court, *Leheny, J.*, denied the defendant's second motion on January 26, 2007. The defendant timely appealed from the denials of both motions. Thereafter, the court awarded the plaintiff $6000 in attorney's fees and costs to defend the

[2] At the hearing on the defendant's May 30, 2006 motion, counsel for the defendant stated that any modification of child support was contingent on whether the court ordered a change in its alimony order, which, he argued, would change the financial circumstances of the parties such that a modification of child support also would be necessary. Because the court denied the defendant's motion and the defendant makes no claim that the court improperly failed to modify its child support order, we limit our discussion to the defendant's claim for a modification of his alimony obligation.

[3] In his second motion, the defendant repeated his claim that a reduction in alimony also was warranted as a result of the plaintiff's cohabitation and the resulting change in her financial circumstances. The defendant, however, does not appeal from the court's denial of his October 24, 2006 motion on the basis of this claim.

appeals, and the defendant amended his second appeal to challenge that award. Additional facts will be set forth as necessary.

I

On appeal, the defendant first claims that the court improperly construed § 46b-86 (b) in denying his May 30, 2006 motion to modify his alimony and child support obligations.[4] Specifically, he claims that the court improperly charged him with providing evidence of specific amounts by which the plaintiff's financial needs had changed. In support of his claim, he argues that even without such quantitative evidence, he clearly established that the plaintiff is supporting Donovan and that such support has altered her financial condition.[5] We disagree.

The following additional facts are relevant to the defendant's claim. Pursuant to the terms of the judgment, the parties sold the marital residence and divided the net proceeds. With her share of the proceeds, the plaintiff purchased a home on April 4, 2006, with the

---

[4] On appeal, the attorney for the minor children has adopted the position of the plaintiff and elected not to file a separate brief. See Practice Book § 67-13.

[5] The defendant further argues that the additional burden of quantifying the change in the plaintiff's financial needs rewarded the plaintiff for Donovan's failure to comply with a subpoena request for Donovan's personal financial records. Our review of the record reflects that although Donovan may have failed to comply with the subpoena, the defendant did not ask the court to continue the hearing or to compel Donovan's compliance. Instead, the defendant merely requested that the court draw an adverse inference as to Donovan's credibility, which a fair reading of the record reveals that the court declined to do. Accordingly, the defendant has failed to preserve this issue, and we decline to address it. See *Cutler* v. *Greenberg*, 60 Conn. App. 752, 754–55, 761 A.2d 237 (2000) (enforcement of subpoena not self-executing, and we cannot ascribe impropriety to failure of compliance when those seeking enforcement never notified court of noncompliance or asked for compliance), cert. denied sub nom. *Cutler* v. *Estate of Agostinelli*, 255 Conn. 943, 769 A.2d 58, cert. denied, 534 U.S. 1056, 122 S. Ct. 648, 151 L. Ed. 2d 565 (2001).

expectation that Donovan and their child would live with her. Since the date of purchase, Donovan has been residing in the new residence with the plaintiff and their child, as well as the parties' three minor children. Donovan testified that he pays for the expenses of his child but not for the defendant's three minor children. Donovan testified, and the court found, that he purchases groceries for the residence once a week, occasionally cuts the lawn and helps with minor household chores. Donovan, however, eats most of his meals at the plaintiff's home, uses her utilities, such as electricity and heat, and pays nothing toward the mortgage, taxes, insurance, utilities, the plaintiff's clothing, fuel and maintenance for the plaintiff's car, furniture, the plaintiff's haircuts or expenses for the parties' three children. The defendant adduced no evidence as to the value of the goods, services and resources provided or consumed by Donovan.

As a threshold matter, we set forth our standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . In reviewing the trial court's decision under [the abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 843–44, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). "Notwithstanding the great deference accorded the trial court in dissolution proceedings, a

trial court's ruling on a modification may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 497, 886 A.2d 817 (2005).

Because the defendant's claim raises a question of statutory interpretation, "our review is plenary. . . . A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . Our legislature . . . enacted General Statutes § 1-2z, which provides that [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, supra, 91 Conn. App. 849–50.

"It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation. . . . It also is well established that we are required to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) Id., 855.

General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a

final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to *alter the financial needs of that party.*" (Emphasis added.)

The court found, and the parties do not dispute, that Donovan was living with the plaintiff for purposes of § 46b-86 (b). The issue in this case is whether this living arrangement altered the financial needs of the plaintiff. As to this second prong, it is the defendant's burden to prove that the plaintiff's living arrangements caused a change of circumstances so as to alter the plaintiff's financial needs. See *Cushman* v. *Cushman,* 93 Conn. App. 186, 199, 888 A.2d 156 (2006). The court found that the defendant had failed to meet his burden because he adduced no evidence as to the values of the contributions that Donovan made to the plaintiff's household or the burdens that Donovan placed on the plaintiff's financial resources.

We begin our analysis by noting that our Supreme Court has defined the purpose of alimony as "the obligation of support that spouses assume toward each other by virtue of the marriage." *Rubin* v. *Rubin,* 204 Conn. 224, 234, 527 A.2d 1184 (1987). This court has stated that "[a]limony is always represented by money and is damages to compensate for loss of marital support and maintenance." (Internal quotation marks omitted.) *Crowley* v. *Crowley,* 46 Conn. App. 87, 98, 699 A.2d 1029 (1997); see also Black's Law Dictionary (7th Ed. 1999) (alimony defined as allowance paid to former

spouse for maintenance following divorce). In other words, alimony represents the court's finding, measured in dollars, of the financial needs of the receiving spouse at the time of the dissolution.

In order to obtain a suspension, reduction or termination of his alimony obligation pursuant to § 46b-86 (b), the defendant must demonstrate that the plaintiff's financial needs, as quantified by the court in setting the alimony award pursuant to General Statutes § 46b-82,[6] have been altered by her living arrangements.[7] Although the alteration need not be substantial; *Gervais* v. *Gervais*, supra, 91 Conn. App. 853; the difference must be measurable in some way before the court can conclude whether a difference, in fact, exists. See *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 487, 678 A.2d 469 (1996) (evidence sufficient when defendant's cohabitation resulted in contribution from cohabitant of $100 per week); see also *DiStefano* v. *DiStefano*, 67 Conn. App. 628, 630 & n.2, 787 A.2d 675 (2002) (evidence not sufficient when cohabitant living in defendant's basement at no charge and storing possessions in basement); *Duhl* v. *Duhl*, 7 Conn. App. 92, 93, 507 A.2d 523 (evidence sufficient when cohabitant paying plaintiff $400 per month for rent), cert. denied, 200 Conn. 803, 509 A.2d 517 (1986); cf. *Lupien* v. *Lupien*, 192 Conn. 443, 444–45,

---

[6] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other . . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[7] "We also note that even after the required factual showings the ultimate decision still is entrusted to the discretion of the trial court. General Statutes § 46b-86 (b)." *Kaplan* v. *Kaplan*, 186 Conn. 387, 389, 441 A.2d 629 (1982).

472 A.2d 18 (1984) (evidence sufficient when cohabitant paid plaintiff $30 weekly for food and performed numerous handyman chores that plaintiff's financial situation previously had prevented her from procuring). In other words, the court must have the ability to compare the plaintiff's financial needs at different points in time in order to determine whether those needs either have increased or have decreased over time. Because the court, in setting the alimony award pursuant to § 46b-82, quantified the plaintiff's financial needs in terms of dollar amounts at the time of dissolution, we conclude that the proper way for the court to determine whether the plaintiff's financial needs have changed as a result of her cohabitation is to quantify her financial needs in terms of dollar amounts during the period of cohabitation. Such an "apples to apples" comparison would harmonize §§ 46b-82 and 46b-86 (b) into one coherent statutory scheme and lead to more just and rational results. See *Krafick* v. *Krafick*, 234 Conn. 783, 804, 663 A.2d 365 (1995) ("[c]asting the judgment in specific amounts will make the result more comprehensible for the litigants and will facilitate appellate review as often as such review may become necessary" [internal quotation marks omitted]).

For purposes of clarity, we note that this construction does not place an unnecessary burden on parties seeking suspension, reduction or termination of alimony under § 46b-86 (b). Parties are not required to account for every penny that leaves the cohabitant's purse or elicit expert testimony as to the value conferred on the alimony recipient by every activity of the cohabitant. The party moving for a change in the court's alimony order, however, must adduce some evidence from which the court reasonably could infer the value of the cohabitant's contributions. The alternative improperly would require courts to speculate as to the values of various goods and resources. In this case, there was

no evidence from which the court could have inferred the value of Donovan's contributions to, or demands on, the plaintiff's financial resources. Accordingly, we conclude that the court properly construed § 46b-86 (b) in denying the defendant's May 30, 2006 motion.[8]

## II

The defendant next claims that the court improperly denied his October 24, 2006 motion to modify his alimony and child support obligations.[9] Specifically, he

[8] The trial court cases cited by the defendant in support of his argument are not inconsistent with our conclusion. For example, in *Rogg-Meltzer* v. *Rogg-Meltzer,* Superior Court, judicial district of New Haven, Docket No. FA-98-0351228-S (November 3, 2005), the court found that the alimony recipient's expenses substantially exceeded her $600 per week self-employment income and that she had been meeting those additional expenditures with contributions in the amount of $5000 per month from the cohabiting party. As a result, the court found she was able to preserve her assets and purchase a more expensive home in an exclusive community. Thus, the court had evidence before it from which it could quantify the effect of the recipient's living arrangements on her financial needs.

In *Peltzer* v. *Peltzer,* Superior Court, judicial district of Hartford, Docket No. FA-96-0711472-S (January 26, 2005), the court found that as a result of her cohabitation, the alimony recipient had purchased an expensive house, expending capital and increasing her debt. The court concluded, therefore, that the purchase of the house constituted a change in her financial circumstances resulting from her residence with another person. The court did not articulate its findings as to the amount of capital that the recipient had expended or the amount by which her debt had increased. We assume, however, that the court had evidence before it from which it could reasonably infer and assign dollar values to the recipient's assets and the amount of her debt. See *Moreira* v. *Moreira,* 105 Conn. App. 637, 641, 938 A.2d 1289 (2008) (when decision of trial court does not state factual predicates of its findings, we assume trial court acted properly).

In contrast, nothing in the record before this court supports the defendant's contention that the plaintiff's total capital or total debt had been altered as a result of the purchase of her new home. Moreover, the record reflects, and the court reasonably could have concluded, that the plaintiff's purchase of her new home and any corresponding changes in her financial status, were the direct result of the divorce decree, rather than her living arrangements with Donovan.

[9] Again, the attorney for the minor children has adopted the position of the plaintiff and has elected not to file a separate brief. See Practice Book § 67-13.

claims that the court improperly found that he had not met his burden of proving a substantial decline in his income or earning capacity. In support of his claim, he argues that the court's finding was clearly erroneous because there is no evidence in the record to contradict his testimony that he has been meeting his expenses by using resources other than income. We conclude that the defendant's argument perverts his burden of proof and that the court's finding was not clearly erroneous.

Resolution of the defendant's claim turns on the following facts. In his October 24, 2006 motion to modify alimony and child support, the defendant claimed that he had not achieved the level of income as a freelance writer that the court had assigned to him in its July 25, 2005 judgment, specifically, $300,000 per year. At the January 22, 2007 hearing on his motion, the defendant testified, and his financial affidavit reflected, that he had earned just $54,000 during 2005, and $77,281, during 2006, but that his weekly expenses totaled $6877, or approximately $357,000 annually. He stated that part of the reason for the decline in his earnings was that he had been receiving less money in advance of writing his books due to high "unearned advances" on previous books.[10] He explained that he had been covering his weekly expenses, which included, inter alia, $200 per week to eat at restaurants, with his share of the proceeds from the April, 2006 sale of the marital residence.[11] He testified, however, that he had exhausted that resource by paying off his old debts and had begun incurring new debts.

---

[10] According to the defendant, an unearned advance results when the publisher of a book is unable to recoup, through book sales, the amount of money that is advanced to the author in anticipation of writing the book.

[11] The plaintiff introduced a copy of the closing statement from the April, 2006 sale of the marital residence, which reflected that the defendant had received more than $950,000 of the net proceeds of the sale.

In its memorandum of decision, the court noted that the defendant had claimed a decline in his net weekly income from $2865 on March 10, 2005, to $201.86 on January 16, 2007. The court further noted that the defendant, over the same time period, had not altered his lifestyle nor reduced his expenses. The court concluded that "[t]he significant discrepancy as to [the defendant's] income and the nature and amount of his personal expenses was not explicated to the court's satisfaction."[12] Accordingly, the court found that the defendant had failed to prove a substantial decline in his income or earning capacity.

After the date of a dissolution judgment, a party to the dissolution may obtain a modification of alimony and child support on "a showing of a substantial change in the circumstances of either party . . . ." General Statutes § 46b-86 (a). "The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 174, 829 A.2d 885 (2003).

As previously noted, we will not disturb the trial court's ruling on a motion for modification of alimony or child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented. *Gervais* v. *Gervais*, supra, 91 Conn. App. 843. Furthermore, "[t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding

---

[12] We note that a comparison of the defendant's February 2, 2006 financial affidavit and his January 16, 2007 financial affidavit reveals a decline in his net worth, i.e., total assets minus total liabilities, of more than $920,000. Thus, according to the defendant's financial affidavits, he depleted his assets at a rate of approximately $21,000 per week between February 2, 2006, and January 16, 2007, despite the fact that his expenses had exceeded his income by just $4100 per week.

of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 844.

In pursuit of its fact-finding function, "[i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 728, 941 A.2d 309 (2008). Because the trial court is the sole arbiter of witness credibility, it has discretion to reject even uncontested evidence. *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 17, 901 A.2d 649 (2006); see also *Mierzejewski* v. *Brownell*, 102 Conn. App. 413, 422, 925 A.2d 1126 (trier free to accept or reject, in whole or part, testimony offered by either party), cert. denied, 284 Conn. 917, 931 A.2d 936 (2007).

The defendant was charged with persuading the court that his circumstances had changed substantially. In attempting to meet his burden, he introduced testimony and documentary evidence that his income and earning capacity had declined since the date of the judgment. The court was free, however, to discredit even his

uncontroverted testimony.[13] Absent any credible evidence that the defendant's income or earning capacity had declined, the court reasonably could have found that the defendant had failed in his quest to prove a substantial change in his circumstances. Accordingly, we conclude that the court's finding was not clearly erroneous and that the court properly denied the defendant's October 24, 2006 motion on that basis.

III

The defendant's final claim is that the court improperly ordered him to pay the plaintiff attorney's fees and costs to defend the present appeals.[14] We decline to review the defendant's claim due to an inadequate record.

On February 28, 2007, the plaintiff filed a motion for counsel fees and expenses. Following a hearing, the court granted the plaintiff's motion, ordering the defendant to pay the plaintiff $5000 toward counsel fees and $1000 toward other costs of defending the appeals. In granting the plaintiff's motion, the court did not make any factual findings or state the basis for its award.

"[General Statutes §] 46b-62 governs the award of attorney's fees in dissolution proceedings. That section provides in part that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82. . . . The criteria

---

[13] The defendant argues that the court's finding was clearly erroneous, in part, because the court made no specific finding as to his credibility. The court's denial of the defendant's motion, however, includes implicit findings that it resolved any credibility determinations and any conflicts in testimony in a manner that supports its ruling. See *State* v. *Brunetti*, 279 Conn. 39, 53 n.23, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). Accordingly, we reject the defendant's argument.

[14] For this claim, the attorney for the minor children has adopted the position of the defendant and again has elected not to file a separate brief. See Practice Book § 67-13.

set forth in § 46b-82 are the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 396, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). "An award of counsel fees under [§ 46b-62] calls for the exercise of judicial discretion. . . . In exercising its discretion, the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities." (Citation omitted; internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002).

In this case, we cannot review whether the award was proper because the record on the matter does not reveal the court's reasoning, specifically, whether or to what extent it considered the criteria set forth in § 46b-82, and the defendant sought no articulation of the court's reasoning. See id. "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, supra, 71 Conn. App. 789. Accordingly, we are unable

to address the defendant's claim that the court's award of attorney's fees was an abuse of discretion.

The judgments are affirmed.

In this opinion the other judges concurred.