******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT R. MURPHY *v.* JAMIE D. MURPHY
(AC 39025)

Lavine, Prescott and Bear, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
denying his motion to modify the dissolution judgment by terminating
his alimony obligation because of the defendant's alleged cohabitation
with her boyfriend. Pursuant to the parties' separation agreement, which
had been incorporated into the dissolution judgment, the plaintiff was
required to pay the defendant periodic alimony. The alimony was non-
modifiable but subject to the condition that it would terminate on, inter
alia, the cohabitation by the defendant as defined by the applicable
statute (§ 46b-86 [b]), which permits the trial court to terminate periodic
alimony upon a showing that the alimony recipient was living with
another person and that the living arrangements caused a change of
circumstances so as to alter the financial needs of the recipient. Follow-
ing the dissolution, the defendant and the parties' minor children rented
a condominium in South Windsor for approximately $1640 per month
for rent and utilities. Thereafter, she and the children moved into her
boyfriend's residence in Bloomfield, paying $800 per month toward the
rent and other housing expenses. In the plaintiff's motion to modify, he
alleged that the defendant's new living arrangements with her boyfriend
resulted in a change of circumstances that altered her financial needs
and, therefore, pursuant the separation agreement and § 46b-86 (b), his
alimony obligation should be terminated. After a hearing, the trial court
denied the plaintiff's motion, concluding that the evidence did not sup-
port a finding of cohabitation pursuant to § 46b-86 (b). In reaching its
decision, the court found that the plaintiff had failed to prove that
the defendant's boyfriend had contributed to her financial support. On
appeal, the plaintiff claimed that the trial court applied an improper
legal standard as a prerequisite for the termination of alimony under
§ 46b-86 (b). *Held* that the trial court improperly interpreted § 46b-86 (b)
to require proof by a preponderance of the evidence that the defendant's
boyfriend made financial contributions to the defendant while she lived
with him in the Bloomfield residence: the trial court interpreted § 46b-
86 (b) too narrowly by focusing solely on the lack of proof of the
boyfriend's financial contributions to the defendant to the exclusion of
the monthly savings to the defendant that resulted from her moving in
with her boyfriend at the Bloomfield residence, as the operative language
of § 46b-86 (b) permitted the court to consider the defendant's savings
associated with her new living arrangements in its determination under
the statute as to whether her financial needs had been altered, and
pursuant to *Spencer* v. *Spencer* (177 Conn. App. 504), the defendant's
alleged reduction in living expenses of approximately $840 per month
was sufficient for a court to conclude, in its discretion and if warranted
by the evidence, that a change in the defendant's financial circumstances
occurred because of her voluntary move into the Bloomfield residence
with her boyfriend and payment of less rent each month; accordingly,
the case was remanded for a new hearing on the defendant's motion
to modify to determine whether that change in circumstances altered
the defendant's financial needs within the meaning of § 46b-86 (b) so
as to cause the termination of alimony pursuant to the separation
agreement.

(*One judge dissenting*)

Argued October 10, 2017—officially released May 8, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Hartford and tried to the court, *Hon. Herbert
Barall*, judge trial referee; judgment dissolving the mar-

riage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Bozzuto, J.*, denied the plaintiff's motion to modify the judgment, and the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Keith Yagaloff*, for the appellant (plaintiff).

*Opinion*

BEAR, J. The plaintiff, Robert R. Murphy, appeals from the judgment of the trial court denying his post-judgment motion, as amended, to modify the judgment rendered in the parties' dissolution action. In that motion he sought, pursuant to paragraph 12 (d) of the parties' separation agreement, which was incorporated into the judgment, to terminate his alimony obligation to the defendant, Jamie R. Murphy, because of her alleged cohabitation with her boyfriend. On appeal, the plaintiff claims that the court applied an improper legal standard as a prerequisite for the termination of alimony under General Statutes § 46b-86 (b). We agree and, accordingly, reverse the judgment of the court and remand the case for further proceedings.

The following facts and procedural history are relevant to this appeal. The marriage of the parties was dissolved on March 12, 2012. The court accepted and incorporated the terms of the parties' separation agreement into the judgment. Paragraph 12 (d) of the separation agreement provided that the plaintiff pay periodic alimony to the defendant in the amount of $400 per month until July, 2016,[1] nonmodifiable as to amount and duration, subject, however, to the condition that alimony would terminate on the earlier of the (a) death of the plaintiff, (b) death of the defendant, (c) remarriage of the defendant, or (d) cohabitation by the defendant as defined by § 46b-86 (b).[2]

Following the dissolution, the defendant rented a condominium on Sunfield Drive in South Windsor. She paid approximately $1640 per month for rent and utilities. In December, 2014, the defendant and her children left the condominium and moved into her boyfriend's residence in Bloomfield (Bloomfield residence). The defendant paid her boyfriend $800 per month toward his rent and other housing expenses. She continued to pay her personal expenses and the expenses she incurred for the parties' minor children.[3]

After learning that the defendant had moved into the Bloomfield residence, the plaintiff filed several motions, including the postjudgment motion, as amended, to modify the judgment by terminating his alimony obligation pursuant to paragraph 12 (d) of the separation agreement.[4] In that motion, the plaintiff alleged that the defendant had relocated to Bloomfield where she was living with her boyfriend and that the new living arrangements resulted in a change in circumstances so as to alter the financial needs of the defendant, i.e., a change in circumstances that was sufficient to satisfy the financial requirement of § 46b-86 (b) for termination of alimony.

On April 21, 2015, the motion appeared on the court's docket, and the parties entered into a written stipulation that the court accepted. The stipulation provided, in

relevant part, that "[i]f [the defendant did] not return to South Windsor on or before August 15, 2015, then the issue of cohabitation and [the plaintiff's] claim to modify/terminate alimony [would] be addressed in mid-September, 2015. Further, if [the defendant] cohabitate[d] in South Windsor the issue of cohabitation [would] also be addressed in mid-September, 2015."

At the hearing, the plaintiff's counsel further explained that "[i]f [the defendant] resumes living in South Windsor and leaves the residence where we're claiming that she's residing with her [boyfriend], then the issue of cohabitation . . . [is] not a major issue and will likely be done with. If [the defendant] returns with her [boyfriend] to South Windsor, or if she does not return to South Windsor and stays in Bloomfield with her [boyfriend], we're going to come back in mid-September and deal with cohabitation."

On August 14, 2015, as a result of the parties' stipulation, the defendant executed a lease for another residence in South Windsor (South Windsor residence). Although the defendant's boyfriend cosigned the lease, it provided that only the defendant and the parties' two children would occupy that residence. The defendant moved into that residence on October 1, 2015.

At the plaintiff's request, the court subsequently scheduled a hearing on the plaintiff's amended post-judgment motion seeking termination of his alimony obligation. The hearing took place over two days in January and February, 2016, during which the court, *Bozzuto, J.*, heard testimony and admitted into evidence various exhibits.

Following the hearing, the court denied the plaintiff's motion. The court found that, although it was clear that the defendant was living with her boyfriend for a period of time at the Bloomfield residence, it was not clear whether her boyfriend "contributed to her support at all, much less to such an extent that the living arrangements caused such a change of circumstances as to alter the financial needs of the defendant." (Internal quotation marks omitted.)

With respect to the period of time after the defendant moved from the Bloomfield residence to the South Windsor residence, the court found that "the record [was] devoid of reliable or probative evidence that the boyfriend contribute[d] financial support to the defendant."[5] The court therefore concluded that the evidence did not support a finding of cohabitation either at the Bloomfield residence or the South Windsor residence, and declined to terminate the plaintiff's alimony obligation to the defendant. This appeal followed.[6]

On appeal, the plaintiff claims that the court improperly concluded that he had to establish a change in the defendant's financial needs pursuant to § 46b-86 (b) on the basis of her boyfriend's financial contributions to

her support during the period of alleged cohabitation at the Bloomfield residence, rather than due to the defendant's altered financial needs as a result of a reduction in her expenses during that period of time. We agree.

Section 46b-86 (b) provides, in relevant part, that "the Superior Court may, in its discretion and upon notice and hearing . . . terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the . . . termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party. . . ."[7]

"[U]nder § 46b-86 (b), a finding of cohabitation requires that (1) the alimony recipient was living with another person and (2) the living arrangement caused a change of circumstances so as to alter the financial needs of the alimony recipient." (Internal quotation marks omitted.) *Spencer* v. *Spencer*, 177 Conn. App. 504, 515, 173 A.3d 1 (2017), cert. granted, 328 Conn. 903, 177 A.3d 565 (2018). "Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony." (Internal quotation marks omitted.) Id. The change in the need of the alimony recipient "need not be substantial . . . [but] the difference must be measureable in some way . . . . [T]he court must have the ability to compare the plaintiff's financial needs at different points in time to determine whether those needs either have increased or decreased over time. Because the court, in setting the alimony award pursuant to [§ 46b-86 (b)], quantified the [receiving party's] financial needs in terms of dollar amounts at the time of dissolution, we conclude that the proper way for the court to determine whether the [receiving party's] needs have changed as a result of her cohabitation is to quantify her financial needs in terms of dollar amounts during the period of cohabitation." (Citations omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 324–25, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

In the hearing on the motion, the defendant did not dispute that the first requirement under § 46b-86 (b) had been satisfied, i.e., that she was living with her boyfriend in the Bloomfield residence. Therefore, the remaining question is whether the court properly interpreted § 46b-86 (b) to require proof by a preponderance of the evidence that the defendant's boyfriend made financial contributions to her during the period of time she lived in that residence. "It is well established that statutory interpretation involves a question of law over which we exercise plenary review." *Friezo* v. *Friezo*, 281 Conn. 166, 180, 914 A.2d 533 (2007).

This court's recent decision in *Spencer* v. *Spencer*, supra, 177 Conn. App. 504, provides precedent for and

supports our analysis in this case.[8] In *Spencer*, the judgment provided that the defendant's alimony obligation would terminate if, inter alia, the plaintiff began cohabiting.[9] Id., 507. The plaintiff began residing with her boyfriend during the period in which she was entitled to alimony payments. Id., 511. As a result of her living arrangements, the plaintiff's monthly housing expense decreased from $950 per month to $375 per month. Id. This court held that a reduction of the former spouse's living expenses was a proper basis on which to find that alimony should be terminated, assuming that both requirements of § 46b-86 (b) were satisfied. Id., 515. This court concluded that "[o]n the basis of the record before us, we have no difficulty concluding that [the trial court's finding of cohabitation pursuant to § 46b-86 (b)] is not clearly erroneous because there is ample evidence to support it, and we are without the definite and firm conviction that a mistake has been committed. *Specifically, the plaintiff's own testimony established that she began living with her boyfriend and that, as a result of that living arrangement, her monthly rent obligations were reduced from $950 to $375. Thus, there was clear evidence of the two requirements imposed by the definition of cohabitation in § 46b-86 (b)*. Accordingly, we conclude that the trial court's termination of alimony was not an abuse of discretion." (Emphasis added.) Id., 521.

In the present case, paragraph 12 (d) of the separation agreement provided that alimony would terminate if the plaintiff cohabited as defined in § 46b-86 (b). The defendant, after the judgment was rendered, began residing with her boyfriend during the period in which she was entitled to alimony payments. As a result of the defendant's living situation, her housing expenses allegedly decreased from approximately $1640 per month to $800 per month, a monthly savings of approximately $840.

In its memorandum of decision, the court iterated that although it was clear that the defendant and her boyfriend were living together in the Bloomfield residence, "[w]hat [was] not clear [was] whether the defendant's boyfriend contributed to her support at all, much less to such an extent that the living arrangements caused a change of circumstances as to alter the financial needs of the defendant." (Internal quotation marks omitted.) The court concluded, "[t]he evidence does not support a finding of cohabitation pursuant to § 46b-86 (b)."[10]

The court's focus on the contributions of the boyfriend derives from appellate decisions such as *Blum* v. *Blum*, supra, 109 Conn. App. 316. In *Blum*, the parties' dissolution judgment provided for termination of the defendant's alimony obligation if the plaintiff cohabited with an unrelated person. Id., 318. The plaintiff purchased a home and her boyfriend moved into her home

with his children. Id., 321. The trial court found that the plaintiff's boyfriend "purchases groceries for the residence once a week, occasionally cuts the lawn and helps with minor household chores." Id. The boyfriend, however, "pays nothing toward the mortgage, taxes, insurance, utilities, the plaintiff's clothing, fuel and maintenance for the plaintiff's car, the plaintiff's haircuts or expenses for the [plaintiff's] three children." Id. The trial court denied the defendant's motion to modify his alimony obligation. Id., 320. In affirming the judgment, this court stated: "The party moving for a change in the court's alimony order . . . must adduce some evidence from which the court reasonably could infer the value of the cohabitant's contributions." Id., 325. The court in *Blum*, however, did not have before it the specific facts of the present case, or of *Spencer*.

This court's decision in *Blum* is correct (and unexceptionable based on its facts)[11] in the circumstance of when a boyfriend (or other person), postjudgment, moves in with an alimony recipient, and then provides some financial support, whether directly or indirectly, to that alimony recipient. In fact, most of this court's decisions applying § 46b-86 (b) do so in the context of the boyfriend (or other person) providing financial support to the alimony recipient, whether the boyfriend moves in with the alimony recipient, or the alimony recipient moves in with the boyfriend, as those are the usual fact patterns. Section 46b-86 (b), however, provides that "the Superior Court may, in its discretion and upon notice and hearing . . . terminate the payment of periodic alimony upon a showing that *the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the . . . termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party*." (Emphasis added.) In the present case, the plaintiff claims that the defendant's financial needs have been altered as a result of her choice to move into the Bloomfield residence with her boyfriend, which caused an approximate savings to her of $840 monthly, separate from and independent of any specific financial contribution by her boyfriend. In light of the language of § 46b-86 (b) and the facts of this case, the plaintiff was and is entitled, even in the absence of any proof that the boyfriend was contributing to the financial support of the defendant, to the opportunity to prove to the court that the defendant's living arrangements with her boyfriend caused a change of circumstances so as to alter her financial needs to the point where the provisions of paragraph 12 (d) of the separation agreement concerning termination of alimony became applicable and should be enforced.

In the present case, the court interpreted § 46b-86 (b) too narrowly by focusing on the lack of proof of the *boyfriend's* financial contributions, to the exclusion

of the *defendant's savings* as a result of her move. Although the boyfriend's contributions may have been factually relevant in *Blum*, proof of them is not a prerequisite in all cases involving the application of § 46b-86 (b), and that is not the only basis pursuant to § 46b-86 (b) to determine if a party's living arrangements cause such a change of circumstances as to alter that party's financial needs. As *Spencer* demonstrates, evidence of a $575 reduction in the receiving party's monthly rent obligation is "clear evidence" of a change in circumstances as to alter the financial needs of that party. See *Spencer* v. *Spencer*, supra, 177 Conn. App. 521.[12]

In summary, in analyzing the plaintiff's claim that the defendant's living arrangements in the Bloomfield residence with her boyfriend caused such a change of circumstances as to alter her financial needs, the court focused solely on whether the defendant's boyfriend contributed to the support of her and her children. The plaintiff's claim, however, was that by moving in with her boyfriend, the defendant saved at least $840 per month in expenses, which resulted in a change in circumstances that altered, i.e., reduced, her financial needs. Prior to the defendant's move to the Bloomfield residence, she allegedly paid $1640 per month for housing expenses, but after the move, she was paying $800 per month, an alleged savings to her of approximately $840 monthly, or approximately $10,080 annually.

The operative language in § 46b-86 (b), "because the living arrangements cause such a change of circumstances as to alter the financial needs of that party," allows the court to consider the defendant's savings as a result of her change in residences in the calculation of whether there has been an alteration in her financial needs. The court has the discretion to conclude, if warranted by the evidence, that the alleged $840 in monthly savings satisfied the requirements of § 46b-86 (b), resulting in a termination of the defendant's alimony pursuant to paragraph 12 (d) of the separation agreement. See *Spencer* v. *Spencer*, supra, 177 Conn. App. 521 (reduction in rent from $950 to $375 sufficient to satisfy statute). The court in the present case did not consider the defendant's monthly savings in living expenses, however, because her boyfriend did not financially contribute the $840 monthly to her.

Pursuant to this court's recent decision in *Spencer*, the defendant's alleged reduction in living expenses of approximately $840 per month is sufficient for a court to conclude, in its discretion and if warranted by the evidence, that a change in the defendant's financial circumstances occurred because of her voluntary move into the Bloomfield residence with her boyfriend and payment of less rent each month. See id., 521. Therefore, the plaintiff is entitled to a hearing on the issue of whether the defendant's alleged $840 monthly living expense reduction as a result of her move to the Bloom-

field residence altered her financial needs within the meaning of § 46b-86 (b) so as to cause the termination of alimony pursuant to paragraph 12 (d) of the separation agreement that the court incorporated into the judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion LAVINE, J., concurred.

[1] Although pursuant to the judgment alimony was to end in July, 2016, as is evident from the plaintiff's claims on appeal, this appeal is not moot.

[2] On August 27, 2013, the parties agreed that the plaintiff's alimony obligation should be reduced to $320 per month. The court, *Olear, J.*, later approved that reduction.

[3] The defendant testified, however, that when she was living with her boyfriend in the Bloomfield residence, she did not "do major grocery shopping and . . . if [she] stopped at Stop and Shop, [she] grab[bed] $15 worth of food, [made] dinner that night and that's it." She also explained that when she was living with her boyfriend, she was not "stocking the house with groceries." She continued, however, by stating that "[n]ow that I am back in my own home again, I am stocking my house with groceries," and that she spent about $125 per week on groceries after moving back to South Windsor. There was no evidence presented regarding the amount, if any, of the boyfriend's financial contribution to the defendant's food expenses while she and the children lived with him in the Bloomfield residence.

[4] The only remedy the plaintiff sought was termination of his alimony obligation.

[5] The plaintiff did not raise any claims on appeal challenging the court's determination that the defendant and her boyfriend were not cohabiting at the South Windsor residence.

[6] The defendant did not file a brief in this court. We therefore decide the appeal on the basis of the plaintiff's brief and the record.

[7] General Statutes § 46b-86 (b) additionally provides that "[i]n the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified, including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith."

[8] *Spencer* was decided after we heard oral argument in this case. We sua sponte permitted the parties "to file simultaneous supplemental briefs . . . analyzing [*Spencer*] and its application, if any, to the present case." Only the plaintiff filed a supplemental brief.

[9] In *Spencer* the dissolution judgment did not specify that the issue of cohabitation would be decided in accordance with § 46b-86 (b), but the trial court and this court still applied § 46b-86 (b) in determining whether the plaintiff had begun cohabiting with her boyfriend. See *Spencer* v. *Spencer*, supra, 177 Conn. App. 507. Additionally, although *Spencer* and earlier decisions use the word cohabitation, that word does not appear in § 46b-86 (b): "The legislature instead chose the broader language of living with another person rather than cohabitation . . . . Because, however, living with another person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § 46b-8[2], the legislature imposed the additional requirement that the party making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient. . . . Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony." (Citation omitted; internal quotation marks omitted.) *DeMaria* v. *DeMaria*, 247 Conn. 715, 720, 724 A.2d 1088 (1999).

[10] Because it was undisputed that the defendant and her boyfriend were living together in the Bloomfield residence, the court's statement must refer to the plaintiff's failure to prove that the defendant's boyfriend contributed to her support in such a manner as to alter her financial needs.

[11] It would be most unusual for a panel of this court to intend, either explicitly or implicitly, to reverse an earlier ruling of this court because, "[a]s we often have stated, this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." (Internal quotation

marks omitted.) *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 759, 966 A.2d 239 (2009); see also *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999) ("[T]his court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc. Before a case is assigned for oral argument, the chief judge may order, on the motion of a party or suo moto, that a case be heard en banc. Practice Book § 70-7 (a).")

As previously stated, *Blum* and many similar precedents have considered and been decided on the basis of the contributions of the cohabitant. Looking at the cohabitant's financial contributions is but one permissible approach permitted by § 46b-86 (b) to determine if the receiving party's financial needs have been altered. This case presents another permissible approach.

[12] The court's interpretation of § 46b-86 (b), requiring evidence of the boyfriend's contributions to the defendant in this case, is contrary to the clear and unambiguous language of § 46b-86 (b) that "the living arrangements cause such a change of circumstances as to alter the financial needs of [the defendant]." In other words, the focus of the statutory language as applied to this case is on whether there was a change in the defendant's financial needs because of her move to the Bloomfield residence, and not on whether there was no change to the defendant's financial needs because her boyfriend did not make a specific financial contribution to her support.

Both our Supreme Court and this court have applied the clear and unambiguous language of § 46b-86 (b) focusing on a change in the receiving party's financial needs, regardless of the source thereof. In *DeMaria* v. *DeMaria*, supra, 247 Conn. 720, our Supreme Court stated that "[b]ecause . . . 'living with another' person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § 46b-8[2], the legislature imposed the additional requirement that the party making alimony payments prove that the living arrangement has resulted in a change in circumstances *that alters the financial needs of the alimony recipient*. Therefore, this additional requirement, in effect, serves as a limitation. Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony." (Emphasis added.) Similarly, in *Lehan* v. *Lehan*, 118 Conn. App. 685, 696–97, 985 A.2d 378 (2010), this court focused on whether there was a change in the alimony recipient's financial needs: "The second requirement is that the plaintiff establish that the defendant's financial needs have been altered as a result of the cohabitation. . . . For purposes of § 46b-86 (b), the plaintiff must demonstrate that the defendant's financial needs, as quantified by the court in setting the alimony award pursuant to . . . § 46b-82, have been altered by her living arrangements." (Citation omitted; internal quotation marks omitted.); see also *Cushman* v. *Cushman*, 93 Conn. App. 186, 199, 888 A.2d 156 (2006) ("the party seeking to alter the terms of the alimony payments must . . . establish that the recipient's financial needs have been altered as a result of the cohabitation" [internal quotation marks omitted]); *Gervais* v. *Gervais*, 91 Conn. App. 840, 853, 882 A.2d 731 ("subsection (b) of § 46b-86, following a finding that a party is living with another individual, allows the court to . . . terminate the payment of alimony if there is a *corresponding change in financial circumstances*" [emphasis added]), cert. denied, 276 Conn. 919, 888 A.2d 88 (2005); *Duhl* v. *Duhl*, 7 Conn. App. 92, 94, 507 A.2d 523 (court concluded that there is no requirement of "financial interdependence such as is found in a common law marriage" before court can order termination of alimony under § 46b-86 (b), and "[n]o such requirement is found in the statute nor [is] . . . such a requirement . . . necessary to fulfill [the statute's] purpose"), cert. denied, 200 Conn. 803, 509 A.2d 517 (1986).

––––––––––––––––––––